ELIZABETH A. BURRILL v. THE S. N. WILCOX LUMBER COMPANY AND MILES STANDISH.

*Fixtures—Mill machinery—Chattel mortgage—Land contract—Trover—Evidence.*

1. Plaintiff held a *valid* chattel mortgage on a shingle-mill in Montcalm county, owned by her son, and consented to its removal to Newaygo county, where he had purchased a tract of land on contract of the S. N. Wilcox Lumber Company, on which he erected a *permanent* mill building, in which he placed the mortgaged property, and operated the same, with plaintiff's consent. The contract provided that on default in payment of the purchase price the buildings and improvements placed or made on the land should remain as additional security for the performance of its conditions, unless removed by the consent of the vendor. The chattel mortgage was duly filed, and in full force when the land was purchased. The son became financially embarrassed, and executed a bill of sale of *all* of his property to his mother, who took possession under both instruments, and placed the shingle-mill in charge of a custodian without removing it from the mill building. During the temporary absence of the custodian, defendant Standish, acting for the Wilcox Lumber Company, took peaceable possession of the mill building and shingle-mill and appurtenances, claiming under the clause in the land contract above referred to. Plaintiff, after demand and refusal, brought trover for the value of the shingle-mill machinery covered by her mortgage and bill of sale, and recovered a judgment at the circuit.

*Held,* that the court properly refused to instruct the jury that the shingle-mill machinery became, by annexation, a part of the land purchased of the S. N. Wilcox Lumber Company, and that

trover would not lie for the same; that it belonged to that class of machinery which must be deemed *movable*, and *personal* property, and that its character as such was agreed upon by the owner and mortgagee when the mortgage was made, of which the defendants had proper notice when the mortgage was filed. *Manwaring v. Jenison*, 61 Mich. 117.

2. On the trial the plaintiff was allowed to prove a conversation had with defendant Standish, after plaintiff had taken possession of the property under her chattel mortgage, in which he made no claim to any interest therein, which was objected to as immaterial and irrelevant.

   *Held*, that, as the conversation was had *before* the *taking* of the property by defendants, this testimony was material, as tending to show that at *that* time they had no right so to do.

3. Whether an alleged copy of a lost bill of sale, sought to be introduced in evidence in place of the original, is a correct copy, is a question of fact for the jury.

4. On the trial of an action of trover for the value of certain chattel-mortgaged property, which was afterwards included with other property in a bill of sale executed to the mortgagee in payment of the mortgage debt, a witness testified to the value of the property *in suit*, and on cross-examination was asked to state the value of the *other* property mentioned in the bill of sale.

   *Held*, that only the value of the property in suit was material.

5. A witness called to testify as to the value of a shingle-mill was asked what he sold a similar mill for.

   *Held*, that the proposed testimony was incompetent.

Error to Newaygo. (Fuller, J.) Argued February 9, 1887. Decided April 28, 1887.

Trover. Defendants bring error. Affirmed. The facts are stated in the opinion.

*W. D. Fuller*, for appellants.

*D. E. Corbitt* (*E. L. Gray*, of counsel), for plaintiff.

SHERWOOD, J. This controversy arises out of a transaction wherein the plaintiff loaned her son the sum of $2,500 in the spring of 1881, and took a chattel mortgage on the shingle-mill and all the appurtenances, which he bought with the money, for her security.

In the fall of 1882, the son, E. C. Burrill, contracted for the purchase of a certain piece of land of the defendant company, and moved the mill on the land. The contract contained the following clause, viz.:

"And that the buildings and improvements placed and made upon said premises by or under the said party of the second part, his representatives and assigns, shall remain thereon as a further and additional security for the execution of the covenants herein contained on the part of the said party of the second part, unless the said party of the first part, its heirs, representatives, and assigns, or some person authorized thereto, shall consent in writing to the removal of such buildings or improvements, or any part thereof."

The property was located in Montcalm county at the time the mortgage was given, and a year and a half afterwards it was removed, with the consent of Mrs. Burrill, to the land contracted for, near White Cloud, in Newaygo county, and was there placed into a building erected by young Burrill. The mortgage was kept properly renewed from year to year by the filing of the proper affidavit for that purpose.

On the twenty-ninth of September, 1884, E. C. Burrill executed a bill of sale of the mill property to his mother. It included all other property owned by him, for the consideration named therein of $3,500.

On the first day of October, 1884, J. H. Tatem, acting as agent for plaintiff, took possession of the mill property for Mrs. Burrill under the chattel mortgage and bill of sale, and placed one Bayne in charge of the same.

On the fifteenth day of October, 1884, the defendant Standish, acting for the S. N. Wilcox Lumber Company, went to the mill, and, finding Mr. Bayne absent at that time, took, as he claims, possession of the land and mill property, claiming the right so to do under the land contract, it having been forfeited by Burrill, and refused to surrender the property in question to Mrs. Burrill on demand being duly made therefor by her attorney, Mr. Tatem. The plaintiff then

brought this suit to recover the value of the mill property.

The cause was tried in the Newaygo circuit, and judgment rendered for plaintiff for $2,666, and costs.

Nine errors are assigned to the charge of the court, and his refusals to charge, and the remainder are to the rulings of the court in taking the testimony. The benefit of all the exceptions upon which error is assigned is claimed by defendants' counsel, and we therefore consider them *seriatim*.

It was claimed upon the trial that the original bill of sale given by E. C. Burrill to the plaintiff was lost, and testimony was offered by plaintiff's counsel to show that fact. A long examination was had upon that subject, and the court held the loss was sufficiently proved to admit in evidence a copy testified to be correct by the party making it, against the objection of the defendants' counsel. The testimony was sufficient, and the ruling of the circuit judge was correct.

When the plaintiff's attorney was upon the stand, the plaintiff sought to prove a conversation had with Mr. Standish for the purpose of showing that the defendant Standish did not claim any interest in the property in question subsequent to its being taken on the chattel mortgage. The objection was immateriality and irrelevancy. We do not think the testimony objectionable on these grounds, because it was subsequent to *this* that the defendants took the property, and the tendency was to show that at *that* time they had no right so to do.

Certainly, whether or not the copy of the bill of sale was a correct one was a question of fact for the jury, and the court was right in so holding.

D. H. Burrill, the father of E. C. Burrill, was recalled for cross-examination, and stated that the property in suit was worth from $3,500 to $4,000 when defendants took possession of it, and stated how the engine and boiler were placed in the building, and was then asked by counsel for defendants

the value of the other property mentioned in the bill of sale. This was objected to by Mr. Tatem, of counsel for the plaintiff, as immaterial, and the court sustained the objection. Only the value of the property in suit was of any materiality in the case, and the objection was properly sustained.

The defendants, for the purpose of establishing the value of the plaintiff's mill, asked George H. Merhtens what he sold his mill for, and took the answer. This testimony was clearly incompetent for the purpose offered, and there was no error in the ruling of the court when he struck out the testimony.

The testimony being closed, counsel for defendants requested the court to instruct the jury that,—

"Under the evidence in this case, the shingle-mill, engine and boiler, and appurtenances, to recover the value of which this action is brought, became by annexation to the land purchased of the S. N. Wilcox Lumber Company by E. C. Burrill, under the contract in evidence, a part of said real estate, and trover will not lie for the value of the same. You will therefore render a verdict for the defendants."

This request we think was properly refused. Under the contract, Burrill was no more than a tenant of the possession. The land was purchased principally for the timber it contained, which was not expected to last for the use of the mill more than five years. The property belonged to that class of machinery which must, I think, be deemed movable, and personal property. It was needed no longer on the property than was necessary to work up the timber; and, as is the usual custom in the lumber region where this was located, it would then be removed to another place where there was business for it. Its character, as personal property, was agreed upon by the only persons who were interested in it when the mortgage was made, and of which the defendants had proper notice when the mortgage was filed. *Manwaring v. Jenison,* 61 Mich. 117, and cases there cited.

The subject-matter of the defendant's ninth assignment of

error has already been considered in what has been said, and we see no objection to the portion of the charge therein referred to. The defendants did not claim to be owners of the property in question by reason of any omission in renewing the mortgage by filing the statutory affidavit, but, by reason of its claimed attachment to the land, they insist it became real estate. Their manner of obtaining title to the property is altogether inconsistent with the idea that it could be regarded as chattels, so as to be subjected to any rights under a chattel mortgage.

There were two renewal affidavits made by Mrs. Burrill, the last one on the ninth day of April, 1883, and the record shows that this renewal affidavit was filed on the same day. This shows the mortgage was in full force on the day the plaintiff was deprived of the possession of her property. She had already acquired the equity of redemption from her son, and had a man in possession of her property.

The law as given to the jury in those portions of the charge included in the tenth, eleventh, and twelfth assignments of error was correct, whether the court gave the proper reason for its application or not.

The remaining four assignments, including that based upon the refusal to charge, have each and all been carefully considered, and we fail to discover any error either in the charge given, or in the refusal to charge, as shown in the record. The judgment will therefore be affirmed.

The other Justices concurred.