EDWARDS & BRADFORD LUMBER COMPANY, APPELLEE,
v. MURRAY RANK ET AL., APPELLEES, AND OTTO GAS-
ENGINE WORKS, APPELLANT.

FILED JANUARY 5, 1899.   No. 8604.

**Fixtures:** CHATTEL MORTGAGES: ENGINES: MECHANICS' LIENS. Where
one purchases an engine with a view that it shall be placed in a
flouring mill of which he is the owner, to propel the machinery
therein, and he executes a chattel mortgage on such engine to
secure the payment of a portion of the purchase price, he thereby
evinces his intention that the engine shall retain its status as
personalty, even though physically attached to the freehold by
such owner, and it will be so regarded by the courts whenever
the rights of innocent third persons will not be prejudiced.

APPEAL from the district court of Dakota county.
Heard below before NORRIS, J.  *Reversed.*

The opinion contains a statement of the case.

*Powers & Hays, E. D. Wigton,* and *Wilbra Coleman,* for
appellant:

The engine never became a fixture or part of the realty.
It was not the intention of the parties that it should.
This intention governs. The giving of the chattel mort-
gage and therein authorizing the mortgagee to take pos-
session of the property and sell same upon default, or to
take possession at any time the mortgagees may deem
themselves insecure, as was done in this case, evidences
the intention of the parties to treat it as personalty.
This agreement to hold it as personal property is not
only binding upon the parties thereto, but also upon all
who acquire prior or subsequent interest in the realty.
(*Tifft v. Horton,* 53 N. Y. 382; *Binkley v. Forkner,* 117 Ind.
176; *Ford v. Cobb,* 20 N. Y. 344; *Campbell v. Roddy,* 44
N. J. Eq. 244; *Buzzell v. Cummings,* 18 Atl. Rep. [Vt.] 93;
*Eaves v. Estes,* 10 Kan. 314; *Crippen v. Morrison,* 13 Mich.
30; *Myrick v. Bill,* 3 Dak. 284; *Rowland v. Anderson,* 33
Kan. 264; *Burrill v. Wilcox Lumber Co.,* 32 N. W. Rep.

[Mich.] 824; *Simons v. Pierce*, 16 O. St. 215; *Sword v. Low*, 13 N. E. Rep. [Ill.] 826; *Sisson v. Hibbard*, 75 N. Y. 542; *Keeler v. Keeler*, 31 N. J. Eq. 181; *Williamson v. New Jersey S. R. Co.*, 29 N. J. Eq. 311; *Sturgis v. Warner*, 11 Vt. 433; *Manwaring v. Jenison*, 61 Mich. 117; *Tibbetts v. Moore*, 23 Cal. 208; *First Nat. Bank v. Elmore*, 52 Ia. 541; *Sowden v. Craig*, 26 Ia. 156; *Miller v. Wilson*, 33 N. W. Rep. [Ia.] 128; *Carpenter v. Allen*, 150 Mass. 281; *Smith v. Waggoner*, 50 Wis. 155; *Malott v. Price*, 109 Ind. 22; *Denhan v. Sankey*, 38 Ia. 269; *Wolford v. Baxter*, 33 Minn. 12; *Grand Island Banking Co. v. Frey*, 25 Neb. 66.)

*M. B. Slocum, Jay & Welty, J. T. Spencer, J. Fowler, R. E. Evans,* and *W. P. Warner, contra:*

The engine is a fixture and will pass with the realty. (*Helms v. Gilroy*, 26 Pac. Rep. [Ore.] 851; *Lyle v. Palmer*, 3 N. W. Rep. [Mich.] 921; *Howlett v. Tuttle*, 24 Pac. Rep. [Colo.] 921; *Taylor v. Collins*, 8 N. W. Rep. [Wis.] 22; *Stillman v. Flenniken*, 10 N. W. Rep. [Ia.] 842; *Capehart v. Foster*, 63 N. W. Rep. [Minn.] 257; *Fletcher v. Kelly*, 55 N. W. Rep. [Ia.] 474; *Gray v. Holdship*, 17 S. & R. [Pa.] 413; *Cooper v. Cleghorn*, 50 Wis. 113; *Franklin v. Moulton*, 5 Wis. 1; *Great Western Mfg. Co. v. Hunter*, 15 Neb. 32.)

NORVAL, J.

This was a suit to foreclose a mechanic's lien for materials sold and delivered by the Edwards & Bradford Lumber Company, a corporation, to Murray Rank for the erection of a steam flouring mill upon certain real estate in South Sioux City, of which Rank was the owner of the undivided two-thirds and the estate of J. M. Moon, deceased, was the owner of the other one-third. Among those made parties defendants were the holders of mechanics' liens on the premises, and J. P. Twohig, and the Dubuque Turbine Roller Mill Company, who owned real estate mortgages thereon. Answers and cross-petitions were filed on behalf of said lienors and mortgagees.

Subsequently the Otto Gas-Engine Works intervened and set up a chattel mortgage on the engine in the mill, executed by Rank and others to secure the payment of the purchase price thereof. Upon the hearing a decree was entered allowing the Moon estate a one-third interest in the realty in the unimproved condition, dismissing the claim of the intervener, awarding foreclosure of the various mechanics' liens and real estate mortgages, and directing a sale of the property subject to the interest of the Moon estate, including the engine embraced in the intervener's chattel mortgage. The Otto Gas-Engine Works prosecutes this appeal.

There is no controversy as to the facts. The several mechanics' liens and real estate mortgages are valid, and the decree foreclosing them is correct. It is disclosed by the written stipulation of the parties that on July 15, 1893, and while the mill was being constructed, Murray Rank and those interested with him in the building of the mill entered into a written contract with Schleicher, Schumen & Co. for the purchase from the latter, to be used in operating said mill, the engine in controversy and the fixtures thereto belonging, for the sum of $1,800, of which amount $450 were to be deposited by the purchasers in the Citizens State Bank of South Sioux City, to be held by it in trust until the conditions of said contract were complied with, and the remainder of the consideration was to be divided into three notes of $450 each, due in six, twelve, and fifteen months respectively from the date of the delivery of the engine. The purchasers were to be permitted to receive the engine on thirty days' trial, and if found satisfactory upon such trial the money so deposited was to be forwarded to Schleicher, Schumen & Co. and the purchasers were to execute their promissory notes as aforesaid. The engine was shipped and received as agreed, and having given satisfaction upon the trial thereof on October 26, 1893, the $450 were paid as agreed and the purchasers also executed and delivered to the vendor their three notes of $450 each, and secured

the payment thereof by a chattel mortgage on the engine, which was duly filed for record on November 2, 1893, in Dakota county. The notes were, before their maturity, for a valuable consideration sold and indorsed to the intervener, the Otto Gas-Engine Works, and no part thereof has been paid. The engine was placed in an outside building upon a suitable brick foundation imbedded in the ground, being securely attached to said foundation by bolts. The tank was set upon a similar foundation of lighter construction, and the forty feet of gas pipe was buried under ground. The engine can be removed without substantial injury to the realty.

The vendors and purchasers alike treated the engine as personalty, and no innocent third parties will be prejudiced by the court holding that the engine did not become a fixture and a part of the real estate. The intention of the parties is a controlling consideration in determining whether the engine was personalty or a fixture. As was well said by IRVINE, C., in the course of his opinion upon the same subject in *Arlington Mill & Elevator Co. v. Yates*, 57 Neb. 286: "There is nothing in the nature of such machinery to stamp it as realty under all circumstances. It may become so or not according to circumstances. If a man sells bricks or nails or shingles for the purpose of erecting a house, these cannot in their specific character be continued, after such use, as personalty, because their very nature forbids such a result; but when an article is of an ambiguous character, such that it may either remain personalty or become attached to the freehold, much depends on the intention of the parties. This is especially true of trade fixtures and of machinery for trade purposes, where they may be removed without substantially impairing, not the property, taking its value with them remaining, but the property considered separately. There it is held that where the vendor and vendee agree that they shall remain personal property they do so, unless perhaps where innocent purchasers have acquired rights in reliance upon their apparent charac-

ter.  From the large number of cases illustrating this principle there may be cited the following, where the contest was between a vendor seeking to enforce the purchase price against the articles as personalty, and an execution purchaser of the real estate: _Sisson v. Hibbard_, 75 N. Y. 542; _Manwaring v. Jenison_, 61 Mich. 117; _Sword v. Low_, 122 Ill. 487."

In _Tifft v. Horton_, 53 N. Y. 380, the court gave expression to the following: "It is well settled that chattels may be annexed to real estate and still retain their character as personal property.  *  *  *  It may in this case be conceded that if there were no fact in it but the placing upon the premises of the engine and boilers in the manner in which they were attached thereto, they would have become fixtures, and would pass as a part of the realty.  But the agreement of the then owner of the land and the plaintiff is express, that they should be and remain personal property until the notes given therefor were paid, and by the same agreement power was given to the plaintiff to enter upon the premises in certain contingencies and to take and carry them away.  While there is no doubt but that the intention of the owner of the land was that the engine and boilers should ultimately become a part of the realty and be permanently affixed to it, this was subordinate to the prior intention expressed by the agreement.  That fully shows her intention and the intention of the plaintiff, that the act of annexing them to the freehold should not change or take away the character of them as chattels until the price of them had been fully paid.  *  *  *  But it is contended that where in the solution of this question the intention is a criterion, it must be the intention of all those who are interested in the lands, and that here the defendants, prior mortgagees of the real estate, were interested and have not expressed nor shown such intention.  It is not to be denied that, as a general rule, all fixtures put upon the land by the owner thereof, whether before or after the execution of a mortgage upon it, become subject to

the lien thereof. Yet I do not think that the prior mortgagee of the realty can interpose before foreclosure and sale to prevent the carrying out of such an agreement as that in this case. Had the mortgagees taken their mortgage upon the lands, after the boilers and engine had been placed thereon under this agreement, they would have had no right to prevent the removal of them by the plaintiff on the happening of the contingencies contemplated by it. The rights of a subsequent mortgagee are no greater than those of a subsequent grantee, and he, it is held, cannot claim the chattels thus annexed, and must seek his remedy for their removal by virtue of such an agreement upon the covenants in his conveyance of the lands. A prior mortgagee, who certainly has not been induced to enter into his relation to the lands by the presence thereon of the chattels in dispute subsequently annexed thereto, has no greater right than a subsequent mortgagee. Neither could claim as subject to the lien of his mortgage personal property brought on to the premises with permission of the owner of the lands and not at all affixed thereto. Nor can either claim personal property as so subject from the mere fact of the affixing where, by the express agreement of the owner of the fee and the owner of the chattel, its character as personal property was not to be changed, but was to continue, and it to be subject to the right of removal by the owner of the chattel on failure of performance of conditions."

The following authorities fully sustain the doctrine that the engine in question did not become a part of the real estate, and that the chattel mortgage given thereon to secure the payment of the balance of the purchase-money is valid and binding: *Ford v. Cobb*, 20 N. Y. 344; *Eaves v. Estes*, 10 Kan. 314; *Crippen v. Morrison*, 13 Mich. 24; *Buzzell v. Cummings*, 18 Atl. Rep. [Vt.] 93; *Myrick v. Bill*, 3 Dak. 284; *Simmons v. Pierce*, 16 O. St. 215; *Sword v. Low*, 13 N. E. Rep. [Ill.] 826; *Tibbetts v. Moore*, 23 Cal. 208; *First Nat. Bank v. Elmore*, 52 Ia. 541; *Carpenter v. Walker*, 5 N. E. Rep. [Mass.] 160,

The decree, so far as it refuses the intervener a lien upon the engine and fixtures, is reversed and the cause is remanded to the court below to enter a decree foreclosing the chattel mortgage, giving the intervener the first and paramount lien on said engine.

REVERSED AND REMANDED.